IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| ARIEL CURTIS, | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. |
| v. | ) |
| CORECIVIC, INC., THE CITY OF ALAMO, GA, and CASSANDRA BONEY, | ) |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

## COMPLAINT

COMES NOW Ariel Curtis ("Curtis"), Plaintiff herein, and files this Complaint against the above-named Defendants, CoreCivic, Inc. ("CoreCivic"), the City of Alamo, Georgia (d/b/a "the Police Department of the City of Alamo") (hereinafter "the City"), and Cassandra Boney ("Boney"), as follows:

**Introduction**

The Fourth Amendment not only protects citizens from searches lacking a proper foundation, but also protects citizens from searches which are conducted in an unreasonable manner.

Plaintiff Curtis, a corrections officer at CoreCivic's Alamo, Georgia, correctional facility with an exemplary work history, was improperly subjected to

multiple strip searches, a seizure of her vehicle, and an intrusive cavity search by, and at the direction of, a CoreCivic employee, after a metal detector at the front gate which was known to malfunction improperly read a false positive as Plaintiff walked through.  Despite multiple pat downs of Plaintiff's person and a search of Plaintiff's vehicle failing to discover any (presumably) metal contraband that the known-to-be-faulty metal detector erroneously indicated metal on Plaintiff's person, Plaintiff was subjected to a multiple strip searches in the parking lot of the Wheeler Correctional facility - in full view of the general public, her co-workers, and the inmates at the correctional facility.  Like the pat downs and the vehicle searches before them, the strip searches failed to discover any contraband. Nonetheless, Plaintiff soon thereafter found herself fully reclined in the driver's seat of her car, pants around her ankles (which were on the dashboard; one leg on each side of the steering wheel), with two latex-glove-covered fingers inside her vagina.  Of course, no metal objects or other contraband was found.

Defendants lacked proper cause to conduct vehicle, strip, and cavity searches of Plaintiff, and the manner in which those searches were conducted not only disregarded Plaintiff's Fourth Amendment rights, but her dignity and value as a human being.

Accordingly, Plaintiff seeks damages, pre-judgment interest, costs (including attorney's fees), and equitable and declaratory relief to the fullest extent allowed by law.

## I. THE PARTIES

1. Plaintiff Ariel Curtis is, and at all times material hereto has been, a female citizen of the United States and a resident of Broxton, Georgia. Plaintiff was an employee of Defendant CoreCivic, Inc. at all times material hereto

2. Defendant CoreCivic, Inc. is a for-profit corporation providing correctional and detention services for the State of Georgia. CoreCivic is a Maryland corporation operating under federal tax laws as a Real Estate Investment Trust, with its principal place of business located at 5501 Virginia Way, Brentwood, Tennessee 37027. CoreCivic owns and operates the Wheeler Correctional Facility where Plaintiff was employed and detained and searched. CoreCivic may be served through its registered agent, Russell Clark, located at 4 West Railroad Ave, Alamo, GA 30411.

3. Defendant the City of Alamo, Georgia is a municipality located in the State of Georgia. The City of Alamo operates from and maintains its main office at 5 Main Street, Alamo, Georgia 30411.

4.  Defendant Cassandra Boney was Plaintiff's supervisor at CoreCivic, Inc.'s Wheeler Correctional Facility, which is located within the jurisdiction of this Court.

## II.  JURISDICTION AND VENUE

5.  Plaintiff Curtis performed work for CoreCivic in Alamo, Georgia, within the jurisdiction of this Court.

6.  At all times material herein, Defendant CoreCivic has been authorized to conduct business within the State of Georgia, has transacted business in the State of Georgia, employed Plaintiff in the State of Georgia, has regularly solicited business and derived substantial revenue from goods used and/or services rendered in the State of Georgia, and committed the acts or omissions which are the subject of this litigation in the State of Georgia.

7.  At all times material herein, the City Defendant has been authorized to conduct business within the State of Georgia, has transacted business in the State of Georgia, has regularly solicited business and derived substantial revenue from goods used and/or services rendered in the State of Georgia, and committed the acts or omissions which are the subject of this litigation in the State of Georgia.

8.  Venue for this action is proper in this district and division pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this judicial district, a majority of the events and omissions giving rise to the claims herein occurred in this judicial

district, and the employment at issue and events giving rise to the claims herein occurred in this district and division.

9.  This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction of Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

### III.  FACTS SUPPORTING PLAINTIFF'S CLAIMS

10. Plaintiff has been a correctional officer for CoreCivic's Wheeler Correctional Facility since March of 2020.  Plaintiff was previously employed as a correctional officer in Coffee County, Georgia, from 2015-2017, and the City of Waycross, Georgia, from 2017-2018, before a medical condition caused her to take a two-year hiatus from work.

11. On Sunday, October 4, 2020, Plaintiff attempted to enter the Wheeler Correctional Facility prior to her shift.  The metal detector through which she walked on her way into work indicated that Plaintiff had metal on her person.  This particular metal detector had a history of false positives, including having, as recently as the day prior (Saturday, October 3, 2020), indicated the presence of metal on an individual when no individuals were walking through, or even close to, the metal detector.

12. Pursuant to CoreCivic's written policy, "any individual entering the facility who cannot clear the metal detector shall be pat searched to determine the reason for failure."

13. Pursuant to the facility's policies and procedures, a facility employee, Sergeant Sharon Creamer, conducted a pat-down of Plaintiff. Sergeant Creamer found no metal objects.

14. Sergeant Creamer called Captain Cassandra Boney, who arrived at the screening area. Thereafter, Creamer and Boney instructed Plaintiff to walk with them into the parking lot.

15. Boney then instructed Plaintiff to pull her pants down. Plaintiff, who was not wearing underwear at the time, complied. After the strip search of Plaintiff in the CoreCivic parking lot failed to uncover any metal objects or contraband, Boney searched Plaintiff's vehicle despite the fact that Boney and Creamer had been with Plaintiff the entire time and there was, therefore, no opportunity for Plaintiff to have moved any suspected metal object or contraband from her person to her vehicle. Boney's search of Plaintiff's vehicle uncovered no contraband. Captain Boney then demanded, and took possession of, the keys to Plaintiff's vehicle, a 2005 black Chevrolet Tahoe.

16. Boney and Creamer then instructed Plaintiff to return to the building, where Plaintiff again walked through the metal detector, which, unlike earlier that

morning, did not indicate any metal on Plaintiff's person. Boney then instructed one of Plaintiff's co-workers to contact the City of Alamo Police Department and inform them that they needed an officer sent to search a CoreCivic employee.

17. When Alamo Police Department Officer K. Zanders arrived, she was informed by Captain Boney that "Ms. Ariel Curtis had contraband on her person" and that a search of Plaintiff, and Plaintiff's vehicle, was required. Boney's statement to Officer Zanders was false.

18. Officer Zanders thoroughly searched Plaintiff's vehicle and found no contraband.

19. Despite multiple pat-downs and multiple searches of Plaintiff's vehicle, none of which indicated the presence of any illicit metal objects or other contraband, Captain Boney requested that Officer Zanders conduct another strip search of Plaintiff. Instead of taking Plaintiff to a private screening area, bathroom, or even a covered enclosure, Officer Zanders conducted a strip search of Plaintiff in the public parking lot of CoreCivic's Wheeler Correctional facility. While sitting in the front seat of her vehicle, with the door open and facing the entry of the correctional facility, Plaintiff was instructed to pull her pants down to her ankles and place her legs on top of her dashboard, with one leg positioned on each side of the steering wheel. Not wearing underwear, Plaintiff was exposed to each and every inmate, coworker, or guest of the facility who happened to be in, or

look into, the parking lot.  Having found no metal objects or contraband during the pat downs, vehicle searches, and strip searches, Officer Zanders then put on a pair of latex gloves and inserted two fingers into Plaintiff's vagina.  No illicit metal objects or contraband was ever found on Plaintiff's person, in Plaintiff's vehicle, or inside Plaintiff's vagina.

20. One inmate at the facility later told Plaintiff that "[He] thought [Plaintiff] was going to jail, but then saw [Plaintiff] drive away."

21. One correctional officer pulled into the parking lot informed Plaintiff that another CoreCivic employee had recently registered a false positive on the same metal detector, but Captain Boney allowed her to enter the facility without being patted down or otherwise searched.

22. Captain Boney then told Plaintiff she could not return to work until Plaintiff spoke with investigator Karen Shepherd.

23. Boney then returned Plaintiff's car keys and Plaintiff allowed to leave the facility.

24. Plaintiff attempted to call the warden and assistant warden of the Wheeler Correctional facility, but did not receive any response.  Investigator Shepherd called Plaintiff two days later, on Tuesday, October 6, 2020.

25. On November 5, 2020, Plaintiff Curtis sent a Notice of Claims and Litigation Hold Notice to CoreCivic, to which she received no response.

26.     Plaintiff Curtis sent an ante litem notice to the Police Department for the City of Alamo, Georgia, through the Mayor of the City of Alamo, Georgia, via certified mail, return receipt requested, on December 15, 2020.  That notice was received by the City of Alamo on December 21, 2020.  Plaintiff received no response to her ante litem notice.

## IV.    PLAINTIFF'S CLAIMS

### Count One (against all Defendants): Violation of Plaintiff's Fourth Amendment Rights resulting from the lack of proper cause to perform a search and seizure of Plaintiff's person and property

27.     The Fourth Amendment to the United States Constitution protects persons from being subject to a search and seizure without reasonable suspicion that such search and seizure would uncover evidence of criminal activity.

28.     Following a false-positive reading by a metal detector which was known to elicit false readings, Plaintiff was subjected to multiple pat downs.  None of these pat downs uncovered any illicit metal objects or other contraband.  These pat downs were conducted to discover potential criminal activity, not to search for any property which may have belonged to the prison.

29.     After the pat downs failed to uncover any metal objects on Plaintiff's person, the Defendants had no reasonable basis upon which to believe Plaintiff was hiding any metal objects in her vehicle or on her person that would require multiple vehicle or strip searches or a cavity search.  Defendants never identified what

9

metal objects they allegedly believed were in Plaintiff's car or person.  No warrant was sought or obtained prior to conducting strip, vehicle, and cavity searches of Plaintiff.

30. There was no reasonable basis for Boney to personally conduct a strip search of Plaintiff in the parking lot.

31. There was no reasonable basis for Boney to conduct a search of Plaintiff's vehicle.

32. There was no reasonable basis for Boney to take Plaintiff's car keys.

33. There was no reasonable basis for the Alamo Police Department to conduct a search of Plaintiff's vehicle.

34. There was no reasonable basis for the Alamo Police Department to conduct a strip search of Plaintiff in the parking lot of CoreCivic's Alamo, Georgia, facility.

35. There was no reasonable basis for the Alamo Police Department to conduct a cavity search of Plaintiff in the parking lot of CoreCivic's Alamo, Georgia, facility.

### Count Two (against all defendants): Violation of Plaintiff's Fourth Amendment Rights resulting from the manner in which the search and seizure of Plaintiff's person and property was conducted

36. The Fourth Amendment protects citizens from the manner in which searches and seizures are conducted.

37.     Assuming, *arguendo*, that Defendant CoreCivic had proper cause to search Plaintiff, there was no reasonable purpose for Defendants CoreCivic and the Police Department to conduct a multiple vehicle and strip searches, and a cavity search, in a public parking lot.

38.     Following the failure of Defendants to find any metal objects or contraband on Plaintiff during multiple strip and vehicle searches, there was no reasonable purpose for conducting a cavity search (with vaginal penetration) in a public parking lot without proper safeguards being taken to protect Plaintiff's dignity.

39.     The repeated searches to which Plaintiff was subjected were demeaning, dehumanizing, undignified, humiliating, terrifying, embarrassing, and signified degradation and submission of Plaintiff by Defendants.

## Count Three:
### Negligent Training, Negligent Supervision, Negligent Retention, and Failure to Implement Effective Policies (against Defendant CoreCivic)

40.     Defendant CoreCivic entrusted certain duties, including the search of all employees, to certain employees.

41.     Therefore, Defendant CoreCivic had a duty to exercise reasonable care in training, supervising, and disciplining such employees in exercising their duties. The need for such training was and is obvious from the nature of the responsibilities entrusted to such employees.

42. Defendant CoreCivic deliberately failed to implement and enforce procedures that employees need to ensure the constitutional validity of searches of its employees.

43. CoreCivic's negligent training, negligent failure to train, failure to properly supervise, and failure to implement policies resulted in the unconstitutional searches of the Plaintiff.

44. As of the date of Boney's unlawful searches and seizures of Plaintiff, a number of complaints had been lodged against her by CoreCivic employees.

45. CoreCivic knew, or should have known, of Boney's propensity to harass her co-workers.

46. Accordingly, CoreCivic should never have allowed Boney to remain in a position of authority which led to the unlawful deprivation of Plaintiff's rights when she was subjected to multiple invasive searches of her person and vehicle, including, but not limited to, strip searches and a cavity search in a public parking lot.

47. CoreCivic's decision to allow Boney to remain in a supervisory position following multiple complaints indicate a failure by CoreCivic to fulfill its duty of ordinary care to its employees, including Plaintiff.

48. As a result of CoreCivic's negligence, Plaintiff suffered injuries described in the preceding paragraphs of this Complaint.

## Count Four (against the City of Alamo):  Negligent Training in violation of 42 U.S.C. § 1983

49. The City's failure to train its officers, including, but not limited to, Officer Zanders, as to the proper evidentiary threshold and manner in which strip and cavity searches are to be performed amount to a deliberate indifference to the rights of the persons with whom those officers come into contact, including, but not limited to, Plaintiff.

50. The City's failure to train its employees/officers as to the proper manner in which strip searches are to be performed amount to a deliberate indifference to the rights of the persons with whom the City's officers come into contact, including, but not limited to, Plaintiff.

## Count Four (against Defendant Boney): Improper deprivation of rights under color of law in violation of 42 U.S.C. § 1983

51. Boney's unreasonable search of Plaintiff's vehicle and person were intended to cause harm to Plaintiff, and ultimately led to a deprivation of Plaintiff's Fourth Amendment rights.

52. Boney's repeated, and unsubstantiated, allegations to third parties regarding Plaintiff's possession of contraband were intended to cause harm to Plaintiff's professional and personal reputations, and ultimately led to a deprivation of Plaintiff's Fourth Amendment rights.

53. Boney, under color of state law, purposefully deprived Curtis of her right to be free from unlawful search and seizure by subjecting Plaintiff to strip and vehicle searches, and by unlawfully seizing possession of Plaintiff's vehicle.

54. Defendant Boney's actions against Curtis lacked a rational relationship to a legitimate state interest.

**Count Five (against Defendant Boney): Intentional Infliction of Emotional Distress**

55. Defendant Boney intentionally engaged in conduct which was extreme and outrageous and which was certain to cause emotional distress to Plaintiff and did in fact cause distress to Plaintiff by: strip searching Plaintiff in a public parking lot, searching Plaintiff's vehicle, taking Plaintiff's car keys so Plaintiff could not leave the premises, and by requesting that Plaintiff be strip searched by the City of Alamo Police Department.

56. Defendant Boney knew or reasonably should have known that her conduct would cause Plaintiff to suffer emotional distress.

57. Plaintiff is entitled to recover both actual and punitive damages against Defendant Boney, as well as attorneys' fees, for the emotional distress Defendant Boney has inflicted upon her.

**V.   RELIEF SOUGHT**

Plaintiff Curtis seeks a judgment against Defendants granting Plaintiff Curtis compensatory, statutory, exemplary, and punitive damages, interest, liquidated

damages, attorneys' fees, costs of litigation, and any and all additional relief as an empaneled jury and this Court deem appropriate.

## VI.    CONCLUSION

WHEREFORE Plaintiff respectfully requests a **trial by jury** on all of Plaintiff's claims which are so triable, and that judgment be entered in Plaintiff's favor and against Defendants on all counts set forth above. [1]

Respectfully submitted this 15th day of February, 2021.

>   */s/ Tyler B. Kaspers*
>   Tyler B. Kaspers, Ga. Bar No. 445708
>   THE KASPERS FIRM, LLC
>   152 New Street, Suite 109B
>   Macon, GA  31201
>   404-944-3128 (Phone)
>   tyler@kaspersfirm.com

---

[1] A Civil Action Cover Sheet is attached hereto as "Exhibit 1," and Summonses for each respective defendant are attached as "Exhibits 2-4."