```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF GEORGIA
                   DUBLIN DIVISION


ARIEL CURTIS,                     *
                                  *
     Plaintiff,                   *
                                  *
     v.                           *    CV  321-015
                                  *
CORECIVIC, INC.; CORECIVIC OF     *
TENNESSEE, LLC; THE CITY OF       *
ALAMO, GA; and CASANDRA BONEY,    *
                                  *
     Defendants.                  *
```

_____

**O R D E R**

_____

Presently before the Court is a motion to partially dismiss the Amended Complaint in the captioned matter filed by Defendants CoreCivic, Inc. and CoreCivic of Tennessee, LLC (collectively referred to as ("CoreCivic") and Casandra Boney. The motion has been fully briefed. The Court has reviewed the Amended Complaint, the relevant law, and the parties' briefs. The motion to dismiss is denied in part and deferred in part as more fully explained below.

**I.   FACTUAL BACKGROUND**

This lawsuit arises out of alleged unconstitutional searches of Plaintiff Ariel Curtis and her vehicle on October 4, 2020, conducted at her place of employment at the Wheeler Correctional

Facility in Alamo, Georgia.  The facts as alleged in the Amended Complaint follow.

Plaintiff was hired as a correctional officer at the State of Georgia's Wheeler Correctional Facility in March of 2020.  (Am. Compl., Doc. No. 21, ¶ 11.)  The facility is owned and/or operated by Defendant CoreCivic.  (Id. ¶¶ 2-3.)  Pursuant to CoreCivic's written policy, "any individual entering the facility who cannot clear the metal detector shall be pat searched to determine the reason for failure."  (Id. ¶ 13.)  When Plaintiff reported to work on October 4th, the metal detector indicated that she had metal on her person.  According to Plaintiff, this metal detector had a history of false positives.  (Id. ¶ 12.)  Pursuant to policy, Sergeant Sharon Creamer, a facility employee, conducted a pat-down search of Plaintiff but did not find any metal objects.  (Id. ¶ 14.)

Sergeant Creamer then called Captain Casandra Boney, a defendant in the case, to the screening area. (Id. ¶ 15.)  Sergeant Creamer and Defendant Boney instructed Plaintiff to walk with them into the parking lot.  (Id.)  There, Defendant Boney instructed Plaintiff to pull her pants down.  Plaintiff, who was not wearing underwear at the time, complied.  (Id. ¶ 16.)  Plaintiff was strip searched but no metal objects or contraband were discovered.  (Id.) Defendant Boney then searched Plaintiff's vehicle but uncovered no

2

contraband.  Defendant Boney then demanded and took possession of Plaintiff's car keys.  (Id.)

Sergeant Creamer and Defendant Boney instructed Plaintiff to return to the building to walk through the metal detector once again.  (Id. ¶ 17.)  This time, the metal detector did not indicate the presence of metal.  (Id.)  Defendant Boney instructed another employee to contact the City of Alamo Police Department, also a defendant in the case, to request an officer to search a CoreCivic employee.  (Id.)

The City of Alamo dispatched Officer K. Zanders, who thoroughly searched Plaintiff's vehicle and found no contraband. (Id. ¶¶ 18-19.)  Nevertheless, Defendant Boney requested Officer Zanders perform another strip search of Plaintiff.  (Id. ¶ 20.) This time, in the parking lot of the facility, Officer Zanders instructed Plaintiff to sit in the front seat of her vehicle, a 2005 Chevrolet Tahoe, with her pants down and her feet on the dashboard so that her legs were positioned on either side of the steering wheel.  Officer Zanders put on a latex glove and digitally penetrated Plaintiff's vagina.  No metal objects or contraband were discovered.  (Id.)

Defendant Boney then returned Plaintiff's car keys and allowed her to leave.  She instructed Plaintiff not to return to

work until Plaintiff spoke with an investigator. (Id. ¶¶ 23-24.) This litigation ensued.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has provided additional guidance to the Rule 8(a) analysis in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Pursuant to the Twombly/Iqbal paradigm, to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true. Id. This same tenet is not applicable to legal conclusions however. Id. at 678, 680.

For a claim for relief to be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." Id. at 679. That is, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." Id. at 678.  A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Finally, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III.  LEGAL ANALYSIS

Based on the factual allegations set forth above, Plaintiff asserts seven claims for relief in the Amended Complaint.[1] Relevant to the instant motion, Counts One and Two assert claims against all Defendants for unreasonable search and seizure under the Fourth Amendment (pursuant to 42 U.S.C. § 1983).  Count Three is a state law claim against Defendant CoreCivic for negligent training, supervision and retention of Defendant Boney.  Count

---

[1] The Amended Complaint contains two Count Fours.  The Court will refer to these counts as Count Four A and Count Four B.

Four B is a § 1983 claim against Defendant Boney for violation of the Fourth Amendment. Through the instant motion, Defendants CoreCivic and Boney seek dismissal of these four claims. They contend that Plaintiff's § 1983 claims fail because Plaintiff has failed to plead sufficient facts to plausibly conclude that they engaged in state action or that they are state actors. They further contend that Plaintiff's state law claim for negligence in Count Three fails because Plaintiff failed to plead sufficient facts to plausibly conclude that Defendant CoreCivic was on notice that Defendant Boney had engaged in prior similar conduct.

### A. Plaintiff's § 1983 Claims

To proceed under 42 U.S.C. § 1983, a plaintiff must allege (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) "that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff's Amended Complaint claims a deprivation of her Fourth Amendment right to be free of unreasonable search and seizure; thus, the first part of a § 1983 claim is satisfied. The Court is left to determine whether Plaintiff has satisfied the "color of state law" component of her § 1983 claim. To be sure, § 1983 liability does not reach "merely private conduct, no matter how discriminatory or wrongful." Focus

6

on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003); see Allocco v. City of Coral Gables, 221 F. Supp. 2d 1317, 1372-73 (11th Cir. 2002) ("As a threshold to liability under § 1983 for an alleged constitutional violation, a plaintiff must show that the conduct at issue resulted from state action."). The actions of a private entity, however, may be attributable to the state under § 1983 if one of the following three tests is satisfied: (a) the "public function test," wherein a private party performs a public function that is traditionally the exclusive prerogative of the state, (b) the "state compulsion test," wherein the state has coerced or significantly encouraged the violative conduct; or (c) the "nexus/joint action test," wherein the state has insinuated itself into a position of interdependence with the private party, such that the state and private party are essentially joint participants in an enterprise. Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001). Defendants CoreCivic and Boney are private parties. Plaintiff relies upon the "public function test" to establish the requisite state action.

Private entities that contract with the state to provide and operate a correctional facility, which is a function traditionally within the state's purview, have been held to be state actors. See, e.g., Thomas v. Coble, 55 F. App'x 748, 748 (6th Cir. 2003)

(holding that "[a] private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983") (cited source omitted). In fact, Defendant CoreCivic has been held to be a state actor in this capacity. See Anderson v. Hall, 2020 WL 2896682, at *2 (S.D. Ga. May 29, 2020) (Report and Recommendation, adopted by 2020 WL 3406329 (S.D. Ga. Jun. 19, 2020)); Snead v. CoreCivic, Inc., 2020 WL 6469995, at *17 (M.D. Tenn. Apr. 6, 2020). Defendants contend, however, that under the circumstances of this case, they were not acting in the capacity of a correctional facility but rather as Plaintiff's employer. Defendants cite cases dismissing § 1983 claims against private correctional facilities sued for their employment decisions-claims such as retaliatory discharge. (Defs.' Mot. to Dismiss, Doc. No. 24, at 12.) Thus, Defendants argue that while they may be state actors for purposes of operating a state correctional facility, they are not state actors for purposes of their employment decisions.

Defendants' contention that the challenged conduct is simply a matter of Plaintiff's employment is misplaced. Plaintiff was a CoreCivic employee when she was subjected to the challenged searches, but penological purposes underlie searches to ensure that no person, employee or otherwise, enters the prison with metal or contraband. The metal detector is utilized in furtherance of

CoreCivic's operational duties as a correctional facility. Any search conducted as a result of failing to clear the metal detector is related to and in furtherance of the operation and management of the correctional facility. Surely, had Plaintiff been a visitor of an inmate in the facility, there would be no question that the alleged conduct was state action, i.e., conduct of a state actor in its capacity as operator of a state prison facility. For this reason, the Court concludes that Defendants were state actors for purposes of the challenged searches of Plaintiff's person and vehicle.

This does not end the analysis, however. Like a municipality, a plaintiff bringing a § 1983 claim against a private contractor acting under color of state law cannot hold that entity liable on a *respondeat superior* or vicarious liability basis. Nesmith v. Corrections Corp. of Am., 2007 WL 2453584, *2 (S.D. Ga. Aug. 23, 2007) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)); Snead, 2020 WL 6469995, at *17 ("The liability of an entity like CoreCivic is analyzed in accordance with *Monell*[2] as if it were a municipal entity."). Thus, in addition to demonstrating an underlying constitutional violation, a § 1983 plaintiff must also

---

[2] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978) (holding that a city is not liable under § 1983 unless a municipal "policy" or "custom" is the moving force behind the constitutional violation).

identify the private entity's policy or custom that led to the alleged constitutional violation.

In discussing this aspect, the Court must first differentiate between Defendant CoreCivic and the individual defendant, Defendant Boney. It is not necessary to show that an individual defendant's violative conduct is related to a custom or policy. Rather, a supervising official acting under color of state law may be held directly liable if she personally participated in the alleged constitutional violation or "when there is a causal connection between the actions of the supervising official and the alleged constitutional violation." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (cited source omitted). In this regard, Plaintiff states sufficient facts to plausibly show that Defendant Boney either personally participated in the alleged constitutional violations or directed the alleged unlawful conduct. More specifically, the Amended Complaint alleges that Defendant Boney instructed Plaintiff to pull her pants down to be searched (Am. Compl. ¶ 16); personally searched Plaintiff's vehicle (id.); personally took Plaintiff's car keys (id.); directed that the City of Alamo Police Department be summoned (id. ¶ 17); and directed that Officer Zanders perform the body cavity search (id. ¶ 20). Thus, Plaintiff has stated a plausible § 1983 claim of direct liability against Defendant Boney in the Amended Complaint.

Whether Defendant Boney was acting pursuant to an official policy or custom is irrelevant.

The Court now turns to whether Plaintiff asserts facts sufficient to plausibly conclude that Defendant CoreCivic may be liable for the misconduct alleged. To do so, Plaintiff must show that a policy or custom led to the misconduct. The only factual allegations in the Amended Complaint pertaining to a policy or custom are as follows:

> 13. Pursuant to CoreCivic's written policy, "any individual entering the facility who cannot clear the metal detector shall be pat searched to determine the reason for failure."
>
> 14. Pursuant to the facility's policies and procedures, a facility employee, Segreant Sharon Creamer, conducted a pat-down of Plaintiff. Sergeant Creamer found no metal objects.

(Am. Comp. ¶¶ 13 & 14.) Defendant CoreCivic contends that these allegations only reach the pat-down search, which is not a challenged action in the lawsuit. That is, these allegations do not link the challenged conduct, the vehicle and strip searches, to a CoreCivic policy.

In response, Plaintiff reveals more of the policy than what she states in the Amended Complaint. She submits as an exhibit to her brief a CoreCivic Policy with an effective date of May 15, 2017, which adds: "If there is no clear explanation for the inability to clear the metal detector, the Shift Supervisor may

11

determine a need to deny access to the facility, **or a need for further action**.  Denial of access and/or further action will require approval of the ADO."  (Pl.'s Resp. to Second Mot. to Dismiss, Doc. No. 26, Ex. 2 (emphasis added).)  Plaintiff claims that the language authorizing "further action" is the policy provision that led to the challenged searches.

Here, the Court is limited to the allegations of the Amended Complaint.  It contains no factual allegations causally linking any policy provision to the course of conduct taken by Defendant Boney.  And, the Court cannot consider matters outside the pleadings at this point.  Notably, even if the policy belatedly supplied by Plaintiff was considered integral to the Amended Complaint, the Court cannot contrive factual allegations necessary to establish the requisite causal link between the policy and the alleged misconduct.  Nevertheless, the Court will afford Plaintiff fourteen (14) days to amend the Amended Complaint for the limited purpose of pleading sufficient facts to show a causal link between a CoreCivic custom or policy and the alleged misconduct in the case.

### B.   Plaintiff's Negligence Claim (Count Three)

In Count Three of the Amended Complaint, which is titled "Negligent Training, Negligent Supervision, Negligent Retention,

and Failure to Implement Effective Policies," Plaintiff claims that Defendant CoreCivic negligently failed to train and supervise Defendant Boney. (Am. Compl. ¶ 46.) She further alleges that Defendant CoreCivic negligently retained Defendant Boney in a position of authority following multiple complaints against her. (Id. ¶ 50.) Finally, Plaintiff claims that Defendant CoreCivic negligently "failed to implement and enforce procedures needed to ensure the constitutional validity of searches" at its facility (id. ¶ 45), which the Court considers part and parcel of a negligent training claim.

In addition to the factual allegations underpinning the unconstitutional searches set forth above, Plaintiff alleges the following:

> 47. As of the date of [Defendant] Boney's unlawful searches and seizures of Plaintiff, a number of complaints had been lodged against her by CoreCivic employees.
>
> 48. CoreCivic knew, or should have known, of [Defendant] Boney's propensity to harass her co-workers.

(Id. ¶¶ 47 & 48.)

Defendant CoreCivic suggests that this entire negligence claim should be dismissed because Plaintiff alleges no facts that would have put CoreCivic on notice that Defendant Boney had engaged in prior similar searches. Defendant CoreCivic points out that while Plaintiff alleges that "a number of complaints" had been

13

raised against Defendant Boney for "harassment," Plaintiff fails to allege that these prior complaints involved improper searches.

First, Defendant CoreCivic's challenge to Count Three only reaches the negligent supervision and retention aspect of the claim. Whether or not Defendant CoreCivic knew about prior complaints against Defendant Boney is irrelevant to issues of negligent training. Second, the Court concludes that Plaintiff has alleged sufficient facts to plausibly state a claim for negligent supervision and retention. Under Georgia law, a plaintiff states a claim for negligent retention if the employer "knew or should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury." Farrell v. Time Serv., Inc., 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001) (quoted source omitted). While Plaintiff does not allege the specific details about the alleged prior harassment, detailed factual allegations are not necessary at this stage, only sufficient facts to make the claim "plausible on its face." Here, the allegations that Plaintiff was injured by the unlawful conduct of CoreCivic's employee after CoreCivic was on notice that the employee was harassing co-workers are sufficient to state a claim of negligent supervision and retention. The Court will leave the matter for discovery, the purpose of which is to ferret out whether the prior complaints of harassment were of such similitude and

14

character as to put CoreCivic on notice that Defendant Boney had the propensity to engage in the harmful conduct that befell Plaintiff.[3] Accordingly, the Court will not dismiss the Count Three negligence claim.

## IV.   CONCLUSION

Upon the foregoing, Defendants' motion to partially dismiss Plaintiff's Amended Complaint (doc. no. 24) is **DENIED IN PART** and **DEFERRED IN PART**. More specifically, Defendant Boney's motion to dismiss Plaintiff's § 1983 claims against her is denied. Defendants CoreCivic, Inc. and CoreCivic of Tennessee, LLC's motion to dismiss Plaintiff's negligence claim in Count Three of the Amended Complaint is also denied. Consideration of Defendants CoreCivic, Inc. and CoreCivic of Tennessee, LLC's motion to dismiss Plaintiff's § 1983 claims against them (Counts One and Two) is deferred until such time as Plaintiff's leave to amend the complaint has expired.

**ORDER ENTERED** at Augusta, Georgia, this 16th day of September, 2021.

_____
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that the cases cited by Defendant CoreCivic in the Reply Brief in support of its position that a plaintiff must allege *similar* prior misconduct (doc. no. 32, at 11-12) were all decided on summary judgment.

15