IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| ARIEL CURTIS, | |
| Plaintiff, | Civil Action No. |
| v. | |
| CORECIVIC, INC., CORECIVIC OF TENNESSEE, LLC, THE CITY OF ALAMO, GA, and CASANDRA BONEY, | 3:21-cv-15-DHB-BKE |
| Defendants. | |

**CORECIVIC, INC., CORECIVIC OF TENNESSEE, LLC, AND CASANDRA BONEY'S
MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT**

COME NOW CoreCivic, Inc., CoreCivic of Tennessee, LLC,[1] and Casandra Boney and move pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 for summary judgment on the claims contained within Plaintiff's Second Amended Complaint for the reasons set forth below.

## I.    FACTUAL BACKGROUND.

CoreCivic operates correctional facilities, including the Wheeler Correctional Facility, in Alamo, Georgia.[2] Plaintiff Ariel Curtis worked at that facility as a correctional officer.[3]

### A.    CoreCivic Policies Governing Employee Searches at Wheeler.

Because the introduction of contraband within the Wheeler facility poses a risk of harm both to inmates and staff, contraband, including cell phones and narcotics, is not allowed in the

---

[1] The CoreCivic defendants are collectively referred to herein as "CoreCivic."
[2] Deposition Transcript of Amy Garner as 30(b)(6) representative of CoreCivic, attached hereto as Exhibit 1, 16:4-7, 17:5-7.
[3] Deposition Transcript of Ariel Curtis, attached hereto as Exhibit 2, 11:13-16.

facility.[4] To help prevent the introduction of contraband, CoreCivic created an "Entry/Exit" policy.[5] This policy provides that "[a]ll individuals must clear a metal detector prior to entering the facility."[6]

The Wheeler facility had a metal detector in the front lobby through which all employees were required to pass in order to access the facility.[7] Plaintiff is not personally aware of any employee ever being allowed access to the Wheeler facility without first clearing the metal detector.[8]

Per CoreCivic's Entry/Exit policy, everyone who fails to clear the metal detector "shall be pat searched to determine the reason for [that] failure."[9] The policy defines a "pat search" as a "search conducted by placement of hands on the individual's clothed body to feel for weapons or contraband."[10]

If the reason for activation of the metal detector cannot be determined, CoreCivic policy requires that a shift supervisor be notified.[11] If a shift supervisor is not provided a clear explanation for a person's inability to clear the metal detector, CoreCivic policy provides that the shift supervisor may either deny entry to that person or determine "a need for further action."[12] Significantly, CoreCivic policy provides that any "further action will require approval of the

---

[4] Deposition Transcript of Donovan Hamilton as 30(b)(6) representative of CoreCivic, attached hereto as Exhibit 3, 21:17-22:2; Exhibit 1, 48:7-11.
[5] CoreCivic Entry/Exit policy, attached hereto as Exhibit 4; Exhibit 1, 30:16-31:7, 31:15-17.
[6] Exhibit 4, p. 5.
[7] Exhibit 4, p. 5.
[8] Exhibit 2, 37:14-20.
[9] Exhibit 4, p. 6.
[10] Exhibit 4, p. 1.
[11] Exhibit 4, p. 6.
[12] *Id.*

ADO."[13]

In addition to defining "pat search," CoreCivic's Entry/Exit policy defines a "strip search" as a "search of an individual that requires all clothing be removed."[14] That particular policy contains no further provisions pertaining to strip searches. However, another CoreCivic policy, "Employee/Volunteer/Contract Staff Searches," provides that "[n]o CoreCivic employee may strip search another employee/volunteer/contract staff without prior approval by the CoreCivic General Counsel (or designee), even if requested to do so by law enforcement personnel."[15]

Neither Donovan Hamilton nor Ms. Boney[16] had any contact with, or received authorization from, CoreCivic's General Counsel or designee to strip or cavity search Plaintiff.[17] Likewise, Mr. Hamilton as ADO never authorized or directed that Plaintiff be strip searched.[18] Further, employees at the Wheeler facility are not strip searched[19] and Plaintiff is unaware of any employee at the Wheeler facility ever being told to remove clothing in connection with any search.[20]

Cavity searches are not permitted by any CoreCivic policy, and Plaintiff is not aware of any such search ever having been done.[21]

---

[13] *Id.* "ADO" is shorthand for "Administrative Duty Officer[.]" (Exhibit 3, 35:11-13). The ADO position rotates within the Wheeler facility. (*See* Exhibit 3, 35:14-16). On the day of Plaintiff's allegedly unconstitutional searches, Donovan Hamilton was the ADO. (*Id.*).

[14] Exhibit 4, p. 1.

[15] *See* CoreCivic Employee/Volunteer/Contract Staff Searches Policy, attached hereto as Exhibit 5, p. 3; Deposition Transcript of Donovan Hamilton, attached hereto as Exhibit 6, 26:21-24.

[16] Defendant Cassandra Boney was the shift supervisor at the time of the searches at issue in Plaintiff's Second Amended Complaint. (*See* Declaration of Casandra Boney, attached hereto as Exhibit 7, ¶1; *See* Exhibit 6, 8:10-12).

[17] *See* Deposition Transcript of Casandra Boney, attached hereto as Exhibit 8, 60:3-6; Exhibit 6, 16:3-4; *see also* Exhibit 7, ¶5; Declaration of Donovan Hamilton, attached hereto as Exhibit 9, ¶5.

[18] *See* Exhibit 6, 16:3-4; Exhibit 9, ¶3.

[19] *See* Exhibit 3, 36:4-8.

[20] Exhibit 2, 132:5-9.

[21] *See* Exhibit 6, 27:12-14; Exhibit 2, 118:8-15, 132:10-15.

The State of Georgia had no input into CoreCivic's "Entry/Exit" or Employee/Volunteer/Contract Staff Searches policies.[22] Additionally, neither of these policies were specifically required or imposed by the State of Georgia.[23]

Everyone entering the Wheeler facility property is notified that their person and vehicle are subject to search, via signs posted at the entrance of the facility parking lot and at the facility front gate.[24] Plaintiff observed these signs while working at the Wheeler facility.[25]

### B.    After Repeatedly Activating the Metal Detector, Plaintiff Was Searched.

On the evening of October 4, 2020, Plaintiff walked through the front entrance metal detector several times on her way to begin work, activating the detector each time.[26] CoreCivic employee Sharon Creamer was working at the front lobby entrance at that time.[27] Because Plaintiff repeatedly activated the metal detector, Ms. Creamer performed a pat search of Plaintiff.[28] After finding no metal object, Ms. Creamer directed Plaintiff to again walk through the metal detector.[29] The metal detector activated again.[30] Ms. Creamer then asked Plaintiff to wait while she called Ms. Boney.[31]

When Ms. Boney arrived a few minutes later, she asked Plaintiff to walk through the metal

---

[22] *See* Exhibit 3, 58:2-8; Exhibit 1, 74:20-25.

[23] Declaration of Amy Garner, attached hereto as Exhibit 10, ¶2.

[24] Photographs showing signs at Wheeler facility, attached hereto as Exhibit 11, pp. 1-4; *see also* Exhibit 6, 22:18-23:15.

[25] Exhibit 2, 136:7-137:14.

[26] Exhibit 2, 9:20-10:7.

[27] Deposition Transcript of Sharon Creamer, attached hereto as Exhibit 12, 8:6-23, 9:16-18.

[28] Exhibit 12, 23:11-24:6; Exhibit 2, 44:13-45:3.

[29] Exhibit 2, 45:5-11.

[30] Exhibit 2, 45:5-11; *see also See* video from Wheeler facility security cameras, attached hereto as Exhibit 13, at video time 5:46:38-5:47:03 (all citations to video refer to the video from the "Front Lobby" camera unless otherwise noted).

[31] Exhibit 2, 45:5-25; Exhibit 8, 24:3-8; Exhibit 13, at video time 5:46:38-5:47:03.

detector.[32] The metal detector again activated around Plaintiff's groin.[33] Plaintiff told Ms. Curtis

and Ms. Boney that she could not clear the metal detector because she had diamonds on the panties

she was wearing.[34] Plaintiff denies this conversation occurred, claims she never told either officer

she had diamonds on her underwear, and contends she said she did not know why the metal

detector was activating.[35]

Ms. Boney then pat searched Plaintiff and passed a handheld wand over the outside of her

clothing.[36] The hand-held detector indicated there was metal around Plaintiff's pelvic area.[37]

Plaintiff admitted she has no objection to Ms. Boney's searches conducted up to this point.[38]

At the same time Plaintiff was activating the metal detector, two other employees passed

through without activating it.[39] CoreCivic is not aware of this metal detector ever having a "false

positive," that is, activating for no reason.[40]

It is undisputed that Ms. Boney then called Mr. Hamilton and told him that Plaintiff had

activated the metal detector, been pat searched, and again activated the metal detector.[41] Ms. Boney

also told Mr. Hamilton that Plaintiff said she had diamonds on her underwear, and that was the

only thing she could think of that was activating the metal detector.[42] Mr. Hamilton told Ms. Boney

---

[32] Exhibit 8, 25:16-25.

[33] Exhibit 8, 24:21-25:4, 25:16-25.

[34] Exhibit 8, 27:5-23; Exhibit 12, 27:25-28:7, 38:2-25, 39:1-4.

[35] Exhibit 2, 54:6-56:7.

[36] Exhibit 13, at video time 5:50:24-5:50:48; Exhibit 2, 51:15-24, 52:13-18, 53:11-15.

[37] CoreCivic Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 3, attached hereto as Exhibit 14, pp. 4-5.

[38] Exhibit 2, 51:22-24, 54:1-5.

[39] Exhibit 2, 16:15-17:9.

[40] Deposition Transcript of Karen Shepherd, attached hereto as Exhibit 15, 14:13-15:8; Exhibit 6, 16:14-16; Exhibit 12; 43:4-7.

[41] Exhibit 6, 9:3-10:7; Exhibit 8, 38:13-16; Exhibit 14, p. 5.

[42] Exhibit 6, 9:3-10:18; Exhibit 8, 38:13-24.

to let Plaintiff show the diamonds on her underwear.[43]

Ms. Boney then approached Plaintiff and asked if she would show her the diamonds.[44] Plaintiff refused to show the underwear in a restroom but said she would show them at her vehicle.[45]

Ms. Boney then called Mr. Hamilton again and told him that Plaintiff said she would show the diamonds on her underwear, but only at her vehicle.[46] Mr. Hamilton told Ms. Boney that Plaintiff could show her the diamonds on her underwear in order to possibly explain why she was activating the metal detector.[47] Mr. Hamilton did not direct Ms. Boney to conduct a strip or cavity search of Plaintiff.[48]

While Plaintiff was waiting on Ms. Boney to finish her call, she was seated in the lobby for a few minutes, along with another CoreCivic employee, Zachary Johnson.[49] As Mr. Johnson and Plaintiff sat in the lobby, Plaintiff said to him that she could not clear the metal detector because there were diamonds on her underwear or brassier.[50]

Plaintiff, Ms. Boney, and Ms. Creamer then exited the facility and walked to Plaintiff's vehicle in the parking lot.[51] Once at her vehicle, Plaintiff contends that Ms. Boney told her to pull her pants down.[52] Ms. Creamer and Ms. Boney, however, contend she unbuttoned her pants

---

[43] Exhibit 8, 38:13-18.
[44] Exhibit 8, 38:13-20.
[45] Exhibit 8, 38:13-22.
[46] Exhibit 6, 9:3-10:18; Exhibit 8, 38:13-24.
[47] Exhibit 6, 9:11-24; Exhibit 8, 38:13-24.
[48] Exhibit 6, 16:3-4; Exhibit 9, ¶3.
[49] Exhibit 13, at video time 6:02:11-6:05:05; CoreCivic Third Supplemental Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 3, attached hereto as Exhibit 16, p. 2.
[50] Exhibit 13, at video time 5:53:41-5:50:50; Exhibit 16, p. 2.
[51] Exhibit 8, 32:2-8; Exhibit 12, 44:17-19.
[52] Exhibit 2, 67:18-22.

without being instructed to.[53] When she did so, Ms. Boney and Ms. Creamer were surprised to realize that Plaintiff was not wearing under-garments.[54] Neither Ms. Creamer nor Ms. Boney knew prior to this time that Plaintiff was not wearing underwear, and at no point prior to this time had Plaintiff told either Ms. Boney or Ms. Creamer that she did not have underwear on.[55]

As Plaintiff pulled her pants down, Ms. Creamer saw that Plaintiff was wearing a large blue pad over her groin, and asked, "what's that?"[56] Without being told to do so by Ms. Creamer or Ms. Boney, Plaintiff then removed the pad and handed it to Ms. Creamer, who touched it, then handed it back to Plaintiff, who then put it back on.[57] This brief moment was the only time Plaintiff exposed the bare skin in the front of her groin.[58]

At no point while they were at Plaintiff's vehicle did Ms. Creamer or Ms. Boney touch Plaintiff.[59]

The three then returned to the front lobby.[60] Plaintiff contends Ms. Boney took her car keys away as they were leaving the parking lot.[61] Ms. Creamer does not recall Ms. Boney requesting the car keys from Plaintiff, and believes the keys had been placed in a bucket inside the Wheeler facility.[62]

Upon entering the lobby, Ms. Boney first proceeded through the metal detector and began

---

[53] Exhibit 12, 39:5-9; Exhibit 8, 28:15-19.
[54] Exhibit 12, 39:5-13; 44:17-46:24; Exhibit 2, 75:17-76:6; *see also* Exhibit 7, ¶2.
[55] Exhibit 2, 75:2-16; Declaration of Sharon Creamer, attached hereto as Exhibit 17, ¶3; Exhibit 12, *see* 28:8-12.
[56] Exhibit 12, 39:5-19; Exhibit 2, 68:22-69:6, 91:2-12.
[57] Exhibit 2, 68:22-69:6, 82:12-83:20, 84:6-25.
[58] Exhibit 2, 86:9-21.
[59] Exhibit 2, 98:20-99:4.
[60] Exhibit 13, at video time 6:02:18.
[61] Exhibit 2, 97:3-7, 97:12-22.
[62] Exhibit 12, 47:2-7.

speaking with another CoreCivic employee in the lobby.[63] Ms. Boney did not observe the metal detector as Plaintiff followed behind her and walked through it.[64] Ms. Creamer likewise did not observe the detector when Plaintiff walked through it.[65] Neither Ms. Boney nor Ms. Creamer intended that Plaintiff be screened by walking through the metal detector at this point.[66] Instead, Ms. Boney intended only that Plaintiff pass through the metal detector as she proceeded to sit in a lobby chair and await further instruction.[67] Plaintiff believes she did not activate the metal detector at this point.[68]

Ms. Boney and Plaintiff then left the facility and returned to Plaintiff's vehicle.[69] Ms. Boney briefly looked at the driver's seat and the driver seat floor.[70] Ms. Boney then left the parking lot and returned to the front lobby so she could recharge the cell phone she was using to call Mr. Hamilton.[71] Plaintiff remained outside at her vehicle.[72]

Ms. Boney then called Mr. Hamilton, who told her to call local law enforcement and have them conduct a pat search of Plaintiff and search her vehicle.[73] Mr. Hamilton gave Ms. Boney no further instruction as to what to say to law enforcement, and never told Ms. Boney to have law enforcement perform any sort of strip or cavity search on Plaintiff.[74]

Ms. Boney accordingly called 911 and requested that a law enforcement officer be sent to

---

[63] Exhibit 13, at video time 6:02:11-6:05:05; Exhibit 7, ¶3.
[64] Exhibit 13, at video time 6:02:11-6:05:05; Exhibit 7, ¶3.
[65] Exhibit 17, ¶4.
[66] Exhibit 7, ¶3; Exhibit 17, ¶4.
[67] Exhibit 7, ¶3.
[68] Exhibit 2, 102:1-5.
[69] Exhibit 13, at video time 6:05:05; Exhibit 2, 106:3-6.
[70] Exhibit 8, 36:4-16; Exhibit 2, 95:16-96:12.
[71] Exhibit 8, 37:5-9.
[72] Exhibit 13, at video time 6:09:35-6:13:55; Exhibit 2, 107:2-6, 109:7-21.
[73] Exhibit 8, 35:9-12, 35:21-25, 39:4-12.
[74] Exhibit 6, 13:2-4; Exhibit 9, ¶3; *see also* Exhibit 7, ¶6.

the Wheeler facility.[75] Ms. Boney then exited the facility with another CoreCivic employee and returned to Plaintiff at her vehicle.[76] An officer from the Alamo Police Department, Karen Zanders, arrived a few minutes later.[77] Ms. Boney told Officer Zanders that Plaintiff appeared to be hiding something, and asked that Officer Zanders pat search Plaintiff and search Plaintiff's vehicle, which Officer Zanders did.[78]

While Plaintiff contends that Officer Zanders also performed a cavity search,[79] Officer Zanders denies ever having done so.[80] Regardless, it is undisputed that Ms. Boney never asked or directed Officer Zanders to conduct a strip or cavity search of Plaintiff.[81] Likewise, Mr. Hamilton never told Ms. Boney to have law enforcement conduct a strip or cavity search of Plaintiff.[82]

After conducting her searches, officer Zanders did not locate any contraband on Plaintiff's person or in her vehicle.[83] Plaintiff was then told she should leave for the day.[84]

### C.   The State of Georgia Did Not Dictate the Creation or Content of CoreCivic Employee Search Policies.

CoreCivic operates the Wheeler facility pursuant to a contract with the Georgia Department of Corrections.[85] That contract includes general operational guidelines, such as preventing the introduction of contraband and protecting the safety of inmates and correctional officers.[86]

---

[75] Exhibit 8, 40:3-7.
[76] *See* Exhibit 13, at video time 6:13:54.
[77] Exhibit 8, 40:14-19; Deposition Transcript of Officer Zanders, attached hereto as Exhibit 18, 13:16-18.
[78] Exhibit 8, 40:14-19, 44:5-9; Exhibit 18, 31:22-32:2, 45:6-46:1.
[79] Exhibit 2, 116:5-17.
[80] Exhibit 18, 46:4-6.
[81] Exhibit 2, 134:11-16.
[82] Exhibit 6, 13:2-4, 16:3-4; Exhibit 9, ¶3, Exhibit 7, ¶6.
[83] Exhibit 18, 46:2-3, 57:4-11.
[84] Exhibit 2, 124:12-21.
[85] Exhibit 1, 19:8-17.
[86] Exhibit 1, 20:14-25.

Significantly, however, the contract does not require that any particular policy be created concerning contraband searches, nor does it direct the content of any such policy.[87] CoreCivic created its Entry/Exit policy, and its Employee/Volunteer/Contract Staff Searches, without direction or input from anyone connected with the Georgia Department of Corrections.[88]

## II.    PLAINTIFF'S §1983 CLAIMS FAIL.

CoreCivic and Ms. Boney are entitled to summary judgment on Plaintiff's §1983 claims against them because none of the acts attributed to them were taken pursuant to a right, privilege, or rule of conduct created by the State of Georgia. A claim under 42 U.S.C. §1983 requires proof of (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) evidence "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Acting under "color of state law," sometimes called "state action," involves two distinct elements: (1) the exercise of a right, privilege, or rule of conduct created by the State which leads to a constitutional violation, and (2) the commission of that constitutional violation by a "state actor." *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000) (*quoting American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).[89]

Here, Plaintiff cannot show either that the challenged acts were taken *pursuant to a CoreCivic policy,* and that such policy was created, required, or directed *by the state of Georgia.*

---

[87] Exhibit 1, 74:20-25; Exhibit 10, ¶¶3-4.

[88] Exhibit 1, 74:20-25; Exhibit 3, 58:2-8; Exhibit 10, ¶¶3-4.

[89] Being a "state actor" does not mean that every action taken is "state action." *See Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (although a private entity conceded that it acted under color of state law in providing juvenile correction services, the "issue, however, is whether [the private entity] acted under color of state law" in taking the *particular action* challenged in a §1983 claim); *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996 ("An entity may be a state actor for some purposes but not for others."); *Bell v. Mgmt. & Training Corp.*, 122 F. App'x. 219, 223 (6th Cir. 2005) (the fact that "incarcerating prisoners is a function traditionally reserved for the state" did not mean that personnel decisions made by a correctional facility was therefore subject to §1983) (internal quotation marks omitted).

As such, Plaintiff's §1983 claims against CoreCivic and Ms. Boney fail.

Additionally, CoreCivic cannot be liable for any acts taken outside of company policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (municipality not liable under §1983 unless its "policy" or "custom" is the moving force behind the alleged constitutional violation).

### A.    No Strip Search, Cavity Search, or Taking of Keys were Pursuant to CoreCivic Policy.

As indicated immediately above, Plaintiff's §1983 claims required a showing that CoreCivic "implemented a policy, custom or practice that caused a deprivation of plaintiff's [constitutional] rights." *Moffat v. Michigan Dep't of Corrections*, No. 09-14696, 2010 WL 3906115, at *9 (E.D. Mich. May 21, 2010). *See also, Ogbeiwi v. CoreCivic America*, No. 1:20-cv-01094-STA-cgc, 2021 WL 2144326, at *4 (W.D. Tenn. May 26, 2021) ("Thus, plaintiffs who seek to impose liability on private prisons under §1983 must prove that an action pursuant to an official policy or custom caused their injury."); *Welch v. CoreCivic, Inc.*, No. 3:17-cv-01516, 2018 WL 5808728, at *1 (M.D. Tenn. Nov. 6, 2018) (§1983 plaintiff must "(1) identify a specific policy or custom; (2) connect the policy or custom to [defendant]; and (3) show that his particular injury was caused by the execution of that policy or custom"). Plaintiff's §1983 claims predicated upon alleged strip and cavity searches and the taking of keys fail because there is no evidence that any such actions were conducted pursuant to CoreCivic policy. [90]

No CoreCivic policy authorizes employee cavity searches. Further, neither ADO Hamilton nor Ms. Boney ever directed anyone, including Officer Zanders, to perform a cavity search on Plaintiff. As such, no cavity search of Plaintiff could have been taken pursuant to CoreCivic policy.

---

[90] While Plaintiff plead that it was a policy alone which led to constitutional violations herein, and thus never contended that any custom or practice led to the wrongs of which she complains (Dkt. 35, ¶¶30-42), CoreCivic nevertheless notes that no evidence exists that any CoreCivic custom or practice gave rise to the constitutional violations alleged herein.

Similarly, CoreCivic policy generally prohibits employee strip searches and allows them only upon approval of the CoreCivic General Counsel or designee. Here, the evidence is undisputed that no such approval was sought or provided. Further, while CoreCivic policy allows "further action" after an individual cannot clear a metal detector, such action falls within CoreCivic policy only if it is taken with "approval of the ADO."[91] Again, the evidence is undisputed that the ADO never directed or requested that Ms. Boney, Ms. Creamer, or anyone else, including Officer Zanders, conduct a strip search of Plaintiff. As no, strip search of Plaintiff could not have been taken pursuant to CoreCivic policy.

Further, the mere fact Plaintiff exposed her bare skin when she pulled her pants down does not mean that CoreCivic authorized or directed that Plaintiff's skin be exposed. The evidence is undisputed that neither Ms. Boney nor Ms. Creamer nor the ADO had any idea that Plaintiff was not wearing underwear. The ADO accordingly authorized only viewing the outside of Plaintiff's undergarment, which is not a strip search, as defined by company policy.

Additionally, the fact that Plaintiff exposed her bare skin was not the result of any act taken or directed by any CoreCivic employee. Rather, after Ms. Boney told Plaintiff to lower her pants, Plaintiff's groin was still covered by a large pad. This pad was removed, and Plaintiff's bare skin was exposed, only because Plaintiff unilaterally removed the pad and handed it to Ms. Creamer *without having been asked or instructed to do so*. Thus, no CoreCivic employee directed that alleged exposure, nor directed it pursuant to CoreCivic policy.

Likewise, there is no evidence that CoreCivic policy specifically authorized or directed anyone to take Plaintiff's vehicle keys, nor any evidence that ADO Hamilton instructed anyone to do so.

---

[91] Exhibit 4, p. 6.

Because no strip and cavity search or the taking of keys occurred pursuant to CoreCivic policy, Plaintiff's §1983 claims predicated upon those actions fail. *See Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1373 (S.D. Fla. 2002) (granting summary judgment in defendant's favor §1983 claim because "[t]here simply is no evidence in the record [showing that] in terminating the plaintiffs, [the defendant] was exercising a right, privilege or rule of conduct created by the state"); *Welch*, 2018 WL 5808728, at *1 (granting summary judgment in defendant's §1983 claim alleging that CoreCivic personnel failed to properly treat plaintiff, given absence of any CoreCivic policy underpinning that alleged misconduct, and given the absence of evidence that any "purported policy or custom was the 'moving force' behind the specific constitutional violation that [plaintiff] alleges"); *Ogbeiwi*, 2021 WL 2144326, at *4 (dismissing §1983 claim against private correctional facility "because Plaintiff failed to allege any facts to establish that an official policy or custom of CoreCivic was the moving force behind any alleged constitutional deprivations"); *see also*, *Brooks v. McDonald*, No. 3:15-cv-383-WKW, 2016 WL 3353964, at *3 (M.D. Ala. May 25, 2016) (dismissing §1983 claim against individual given no evidence that individual was "state actor").

Moreover, even assuming for summary judgment purposes only that Ms. Boney conducted a strip search, directed Officer Zanders to conduct a strip and/or cavity search, and took Plaintiff's car keys, such conduct by Ms. Boney would not impose §1983 liability on CoreCivic. An entity like CoreCivic is not liable under §1983 for its agents or employee's wrongdoing, i.e., acting in contravention of and/or outside the bounds of corporate policy. *See Monell*, 436 U.S. 658, 691 (1978) (municipality not liable under §1983 unless its "policy" or "custom" is the moving force behind the alleged constitutional violation); *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997) (§1983 "plaintiff must also demonstrate that, through its deliberate

conduct, the [corporate and/or municipal entity] was the 'moving force' behind the injury alleged"); *Welch*, 2018 WL 5808728, at *1 ("§1983 does not support *respondeat superior* liability"); *Moffat*, 2010 WL 3906115, at *9 ("Corporations . . . cannot be held liable under §1983 on a respondeat superior or vicarious liability basis."); *Ogbeiwi*, 2021 WL 2144326, at *4 ("§1983 liability does not attach to a private prison based on the actions of its employee tortfeasors under the doctrine of *respondeat superior*; instead, such liability is imposed on the basis of the prison's own customs or policy.").[92]

### B.    CoreCivic's Entry/Exit and Employee Search Policies Were Not Created by or at the Direction of the State of Georgia.

In addition to being required to establish that any alleged wrongful acts were taken pursuant to a CoreCivic policy, Plaintiff was required to show that such policy was attributable to the State. *See Allocco*, 221 F. Supp. 2d at 1372.

Plaintiff cannot satisfy that requirement, since undisputed record evidence establishes that the State of Georgia did not specifically direct, require, or otherwise produce the policies at issue herein.[93] Plaintiff is therefore unable to demonstrate that the alleged unconstitutional strip, cavity,

---

[92] While Plaintiff cannot establish that liability exists under CoreCivic's facially lawful policy, liability also cannot lie under the alternative theory that CoreCivic's policy was actually illegal. Such theory requires proof that: (1) a policy was illegal; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Griffith v. Franklin County, Kentucky*, 975 F.3d 554, 581 (6th Cir. 2020) (*quoting Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). There is no record evidence of *any* of those alternative proofs. This is true even if Plaintiff were to invoke the third proof method (policy of inadequate training or supervision). That method requires more than alleged inadequate training; instead, deliberate indifference must exist. *Griffith*, 975 F.3d at 583. Deliberate indifference is shown only via proof of "prior instances of unconstitutional conduct demonstrating that the [defendant] . . . was clearly on notice that the training in this particular area was deficient and likely to cause injury . . . or a single violation of federal rights, accompanied by a showing that a [defendant] has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id*. There is no such proof in this case.
[93] See pp. 3-5; 12, *infra*.

and vehicle searches or the alleged unlawful seizure of her car keys were mandated by a policy attributable to the State. Accordingly, her §1983 claims against CoreCivic and Boney fail. *See, e.g.*, *Monell*, 436 U.S. at 691; *Allocco*, 221 F. Supp. 2d at 1372 (dismissing §1983 claim in part because "[there simply is no evidence in the record . . . that [the defendant], in terminating the plaintiffs, was exercising a right, privilege or rule of conduct created by the state").

This conclusion applies not only to alleged strip and cavity searches and the taking of Plaintiff's vehicle keys, but also as to Boney's and Zanders' alleged vehicle searches. Even assuming these searches were directed by ADO Hamilton and were thus arguably taken per the "further action" language of CoreCivic policy, such acts still do not give rise to §1983 liability since that policy was not created or directed the state of Georgia. *Id.*[94]

## III.  PLAINTIFF'S NEGLIGENCE CLAIMS FAIL.

All of Plaintiff's negligence claims require, at their essence, evidence that CoreCivic knew or should have known that Ms. Boney had engaged in actions similar to those challenged herein or would do so in the future, and then failed to act appropriately in response to that knowledge. *See Edwards v. Comtrak Logistics, Inc.*, No. 1:12-cv-1261-SCJ, 2014 WL 11820247, at *9 (N.D. Ga. Mar. 5, 2014) ("In order to defeat summary judgment on [a claim for negligent *training*], a plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue . . . [a]n employer may be held liable for negligent *supervision* only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behaviors relevant to the injuries allegedly incurred[.]")

---

[94] To the extent that Plaintiff predicates her §1983 claim against Ms. Boney on the basis that she allegedly told Officer Zanders that Plaintiff had contraband on her (Dkt. 35, ¶55), such contention fails since there is no evidence that such alleged comment was uttered pursuant to CoreCivic policy nor to a policy created by the State.

(emphasis added); *Jane Doe No. 1 v. Fulton-DeKalb Hosp. Auth.*, No. 1:05-CV-2277-TWT, 2007 WL 3027393, at *5 (N.D. Ga. Oct. 12, 2007) ("Georgia's courts have held that negligent supervision and retention is demonstrated 'only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior[.]'").

Plaintiff's negligence claims fail because there is no such evidence.

There is absolutely no evidence that Ms. Boney (nor *any* CoreCivic officer) had *ever* previously stripped searched an employee, conducted or directed a cavity search on an employee, or taken someone's vehicle keys. Cavity searches of employees are not even permitted by CoreCivic policy, and Plaintiff admitted in her deposition she is unaware of any employee ever having been directed to remove any clothing in connection with a search at the Wheeler facility.[95] Given the absence of any "warning" to or knowledge by CoreCivic that such acts might be taken by Ms. Boney (let alone any other CoreCivic employee), CoreCivic cannot have been deemed be negligent as to the alleged occurrence of those acts upon the Plaintiff. *See Edwards*, 2014 WL 11820247, at *9 (negligence claims dismissed without evidence of prior knowledge of acts similar to challenged actions); *Duke v. United States*, No. 1:12-CV-17-TWL, 2013 WL 12212931, at *5 (M.D. Ga. May 13, 2013) (dismissing negligent supervision claim involving a tricycle accident, given no evidence that the employee who injured the plaintiff had any history of horseplay related to tricycles); *Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (681 S.E.2d 258) (2009) (affirming summary judgment dismissal of negligent supervision claim given no evidence that the defendant-employer knew or should have known that employee had previously engaged in the conduct giving rise to the lawsuit); *Pierri v. Cingular Wireless, LLC*, 397 F. Supp. 2d 1364, 1383 (N.D. Ga. 2005)

---

[95] Exhibit 2, 132:5-9.

("Because the alleged harassing conduct toward Plaintiff is unrelated to the type of conduct complained of earlier, Defendant was not put on notice of Mr. Murray's alleged propensity for gender harassment. . . Defendant's Motion for Summary Judgment should be Granted as to Plaintiff's negligent hiring and retention claim.").

This conclusion does not change merely because such conduct allegedly occurred as to Plaintiff. *La Petite Academy, Inc. v. Turner*, 247 Ga. App. 360, 396 (543 S.E.2d 393) (2000) ("It is a well settled principle of negligence law that he occurrence of an unfortunate event is not sufficient to authorize an inference of negligence.").

## IV.   PLAINTIFF'S INTENTIONAL INFLICTION CLAIM FAILS.

Though the basis of Plaintiff's intentional infliction of emotional distress claim is unclear, it fails under any possible theory. To the extent this claim is predicated upon Plaintiff exposing her bare skin and/or being subject to a strip and/or cavity search by Officer Zanders, the claim fails because, as noted above, Plaintiff has no evidence that Ms. Boney directed nor intended that Plaintiff expose her bare skin, nor that Ms. Boney directed Officer Zanders to conduct a strip or cavity search. As such, Ms. Boney was not the proximate cause of these alleged acts. *See Barrett Properties, LLC. V. Roberts Capital, Inc*., 316 Ga. App. 507, 509 (729 S.E.2d 621) (2012) ("[T]here is a lack of evidence that the [defendants] were the proximate cause of any harm . . . the trial court did not err in awarding summary judgment[.]").

Further, to the extent the claim is predicated upon Ms. Boney briefly 'searching' Plaintiff's vehicle, taking her keys, and asking to see Plaintiff's underwear, the claim fails because such acts cannot meet the high threshold showing that conduct be extreme and outrageous. A cursory glance within Plaintiff's vehicle, and an intended look at the outside of Plaintiff's underwear, cannot be deemed extremely outrageous when such acts occur at a correctional facility which seeks to

preclude the introduction of contraband at that facility, following Plaintiff's repeated activation of a metal detector, without explanation. *See, e.g.*, *Norfolk Southern Ry. Co. v. Spence*, 210 Ga. App. 284, 285 (435 S.E.2d 680) (1993) (intentional infliction claims require conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency"); *Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier*, 349 Ga. App. 203, 211 (825 S.E.2d 542) (2019) ("It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice. . . Liability has been found only where the conduct has been extreme and outrageous.").

Further, this claim fails because, even assuming Ms. Boney took the action alleged, there is no evidence she did so to intentionally harm Plaintiff. *Ward v. Papa's Pizza To Go, Inc*., 907 F.Supp. 1535, 1540 (S.D. Ga. 1995) (dismissing intentional infliction claim given "complete lack of evidence that [alleged perpetrator] sought intentionally to harm the Plaintiff or acted in any way evincing a reckless or wanton disregard of consequences") (internal quotation marks omitted).

Finally, this claim fails since there is no evidence indicating that Plaintiff suffered severe emotional distress as a result of any acts attributed to Ms. Boney. *See, e.g.*, *Plantation at Bay Creek Homeowners Ass'n*, 349 Ga. App. at 212 (intentional infliction claims require evidence that "distress inflicted [wa]s so severe that no reasonable person could be expected to endure it"); *Abdul-Malik v. AirTran Airways, Inc.,* 297 Ga. App. 857, 858 (678 S.E.2d 555) (2009) (summary judgment granted on intentional infliction claim given no evidence of extreme emotional distress).

## V.    PLAINTIFF'S INVASION OF PRIVACY CLAIM FAILS.

The basis for Plaintiff's invasion of privacy claim is likewise unclear, but again, this claim fails under any possible theory. To the extent this claim rests upon an alleged strip and/or cavity

searches by Officer Zanders, such claim fails because there is no evidence that CoreCivic or Ms. Boney were the proximate cause of those alleged actions. Thus, while Plaintiff claims that Officer Zanders did in fact perform a strip and cavity search, Plaintiff admits that Boney did not instruct the officer to do so, and there is no evidence that Mr. Hamilton directed anyone to conduct such searches. Thus, because neither CoreCivic nor Ms. Boney caused these searches, they cannot be liable in tort for them. *Barrett Properties, LLC.*, 316 Ga. App. at 509 (dismissing tort claim given absence of evidence showing proximate cause between defendant's alleged acts and plaintiff's alleged injury).

Similarly, Plaintiff cannot demonstrate that Ms. Boney or CoreCivic caused an unreasonable intrusion when Plaintiff exposed her groin. Although Plaintiff claims that Ms. Boney directed her to pull her pants down, Plaintiff admits that she did not tell Ms. Boney she was not wearing underwear, and neither Ms. Boney nor Ms. Creamer knew that Plaintiff had no underwear on. Plaintiff's groin was exposed only after she removed, on her own volition and without direction from any CoreCivic employee, a pad she had between her legs. Because alleged exposure of Plaintiff's skin was not caused by Ms. Boney or CoreCivic, they are not tortiously liable for it. *Id.*

Plaintiff's claim also fails because there is no evidence that Plaintiff suffered any unreasonable intrusion. Ms. Boney's "search" of the vehicle involved only a cursory glance at the driver's seat and vehicle floor. Moreover, such search could not have unreasonably invaded Plaintiff's seclusion, solitude or private affairs, given that Plaintiff was well aware of signs at the Wheeler facility advising that "[a]ny person or motorized vehicle entering beyond this point is subject to being searched[.]"[96] Likewise, there is no legal support to conclude that the mere taking of Plaintiff's vehicle keys interfered with her privacy. Further, a prison officer being asked to show

---

[96] Exhibit 11, p. 3.

the outside of her underwear cannot be deemed offensive to a reasonable person as a matter of law, in a correctional facility setting wherein contraband is prohibited, and its introduction dangerous to staff and inmates alike. *See Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 705 (409 S.E.2d) (1991) (there are "[s]hocks, inconveniences and annoyances which members of society in the nature of things must absorb without the right of redress").

Respectfully submitted this 17th day of June, 2022.

/s/ Rachel P. Kaercher
Kurt Peterson (Admitted *pro hac vice*)
Georgia Bar No. 574408
kpeterson@littler.com
Rachel P. Kaercher
Georgia Bar No. 743007
rkaercher@littler.com

LITTLER MENDELSON, P.C.
3424 Peachtree Rd. NE,
Ste. 1200
Atlanta, GA  30326-1127

Attorneys for Defendants
CoreCivic, Inc., CoreCivic of Tennessee, LLC,
and Casandra Boney

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2022, I electronically filed the foregoing **DEFENDANTS CORECIVIC, INC., CORECIVIC OF TENNESSEE, LLC, AND CASANDRA BONEY'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Tyler B. Kaspers
The Kaspers Firm, LLC
152 New Street, Suite 109B
Macon, Georgia 31201
Tyler@kaspersfirm.com

J. Travis Hall
Beatrice C. Hancock
Chambliss, Higdon, Richardson, Katz & Griggs, LLP
P.O. Box 18086
Macon, GA 31209
thall@chrkglaw.com
bhancock@chrkglaw.com

*/s/ Rachel P. Kaercher*
Rachel P. Kaercher